## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### CHARLESTON DIVISION

**TIMOTHY SEAN COOGLE,**

      **Movant,**

**v.**                         **Case No. 2:18-cv-01291**
                                         **Criminal Case No. 2:17-cr-00167-01**

**UNITED STATES OF AMERICA,**

      **Respondent.**


### PROPOSED FINDINGS AND RECOMMENDATIONS

Pending before the Court are Movant Timothy Sean Coogle's *pro se* Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 and request for appointment of counsel, (ECF No. 42), and his Motion to Amend, (ECF No. 57). This matter is assigned to the Honorable John T. Copenhaver, Jr., United States District Judge, and by standing order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition ("PF&R") pursuant to 28 U.S.C. § 636(b)(1)(B).

The undersigned **GRANTS** Coogle's Motion to Amend. (ECF No. 57). However, for the reasons that follow, the undersigned respectfully **RECOMMENDS** that Movant's § 2255 motion and request for appointment of counsel, (ECF No. 42), be denied and this matter be dismissed, with prejudice, and removed from the docket of the Court. Given that the undersigned conclusively **FINDS** that Movant is not entitled to the relief requested, an evidentiary hearing is not warranted. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

1

## I.    <u>Factual and Procedural Background</u>

Movant, Timothy Sean Coogle ("Coogle"), met the 13-year-old female victim in this case (hereinafter the "minor") when she visited her extended family who lived "two houses down" from Coogle's home in North Carolina. (ECF Nos. 53-1 at 37, 63 at 7). The minor, who resided in West Virginia, reportedly visited her relatives three or four times per year, and she played with Coogle's children and interacted with Coogle during those visits, as the neighboring families were "close" friends. (ECF Nos. 53-1 at 63-64, 63 at 7).

On August 12, 2017, Coogle sent a direct message to the minor on the social media application, Instagram, asking her if she shared her social media account with anyone, and stated that he "liked the picture" of her wearing a bikini at the beach. (ECF No. 53-1 at 9). The minor never responded to Coogle, and Coogle sent another direct message, apologizing for the compliment and asking her not to tell anyone what he said. (ECF Nos. 53-1 at 9, 62 at 2). On August 29, 2017, the minor's mother discovered Coogle's messages to her daughter. (ECF No. 53-1 at 9). She notified law enforcement, and an undercover agent (hereinafter the "UC/Minor") began communicating with Coogle using the minor's Instagram account. (*Id.*). In the conversations, Coogle discussed the sexual activity that he wished to engage in with the minor, stating that he wanted to be her first sexual partner. He confirmed the minor's birthdate; she was 13 years old at the time of the communication. (*Id.* at 10-11). He told the UC/Minor to wear the bikini from the picture when she came to visit in October, adding that he wanted to "be the first to taste her," and stating that it was good that she was a virgin and inexperienced, as he would teach her everything that she needed to know about sex. (*Id.*). Coogle urged the UC/Minor to send him nude pictures of herself. Following additional sexually explicit

conversations about Coogle's sexual frustration and what he wanted to do with the minor when she came to visit North Carolina, Coogle sent the UC/Minor an 11-minute live video stream of himself in which he removed his shorts and fondled his erect penis. (*Id*. at 11-12). Coogle asked the UC/Minor to send similar live video of herself "touching it." (*Id*. at 12).

On September 26, 2017, a federal grand jury in this judicial district returned an indictment that charged Coogle with using a facility of interstate commerce to attempt to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b). (ECF No. 53-1 at 14). Coogle was initially appointed a federal public defender in his criminal case, but he subsequently retained a North Carolina criminal defense attorney, J. Darren Byers ("Byers"), to represent him. (ECF No. 53-1 at 31). On January 14, 2018, Coogle entered into a plea agreement with the government in which he agreed to plead guilty to the one-count indictment. (*Id*. at 1-13). In the plea agreement, Coogle stipulated to the above-stated facts and waived his right to appeal or collaterally attack his conviction or sentence, except that he retained the right to appeal a sentence that exceeded the statutory maximum or included an upward variance from the United States Sentencing Guidelines ("USSG"). Coogle could also challenge his conviction and sentence on the ground of ineffective assistance of counsel. (*Id*. at 4-5).

On January 31, 2018, the Court held a thorough plea colloquy hearing before accepting Coogle's guilty plea. (*Id*. at 15-68). At Coogle's sentencing hearing on May 17, 2018, the Court applied a three-level downward variance from the recommended sentence of 168 to 210 months under the USSG, sentencing Coogle to 121 months imprisonment, which amounted to just one month more than the statutory minimum sentence. (*Id*. at 116-117).

3

On August 30, 2018, Coogle wrote a letter, which he mailed to the Court, asking the Court to give the letter to a public defender. (ECF No. 42 at 1). In the letter, Coogle claimed that Byers provided ineffective assistance of counsel in several respects. (*Id.* at 2). First, Coogle contended that Byers failed to give him the opportunity to make changes to his presentence report, noting that "the judge was not happy" when Coogle tried to make the changes during his sentencing hearing. (*Id.* at 7). Second, Coogle alleged that Byers "could not answer basic questions at sentencing" regarding Coogle's assets and had to ask for permission to speak with Coogle's wife "to get answers." (*Id.* at 7, 8). Third, Coogle asserted that he "was pushed into taking the plea" because Byers stated that Coogle could not win at trial and might be charged with a superseding indictment. (*Id.* at 7). Fourth, in a ground which Coogle did not attribute to Byers, Coogle stated that "in the beginning," he intended to remain in North Carolina and plead guilty, but the government told his federal public defender that Coogle had a chance to receive less than the mandatory minimum if he came to West Virginia. (*Id.*).

Coogle acknowledged in his letter that he told the Court in his plea hearing that he was not threatened into taking the plea and that his lawyer was effective. (*Id.* at 8). However, Coogle stated that he was "mentally drained" because he was moved from jail to jail to "burn [him] out." (*Id.*).  In addition, the circumstances were taking a toll on his family and Coogle just "wanted it to be over." (*Id.*). Coogle claimed that his wife had exhausted their children's college funds and most of her retirement account to pay Byers's basic fee, so Coogle did whatever Byers instructed rather than risk having to pay him more money. (*Id.* at 8-9). Coogle also mentioned other issues in his letter, which he did not include in the "grounds" section. Specifically, he stated that Byers was seated at the prosecution's table at his arraignment and had to be asked to move to the correct

side. (*Id*. at 2). Moreover, Byers reportedly told Coogle that he could fight Coogle's case based on entrapment, but Byers "gave up on that when he brought [Coogle the] discovery." (*Id*. at 2). Also, Coogle complained that Byers did not accept jail calls as a practice and did not spend sufficient time with Coogle. (*Id*. at 2-3). Coogle stated that Byers delivered discovery materials to him that were very confusing. (*Id*. at 3). Finally, Coogle alleged that Byers misplaced several of Coogle's character letters and "was lost" when the Court asked him "basic questions" during the sentencing hearing, making it "easy to see [that Byers] had not researched" Coogle's case or spent any time with Coogle. (*Id*.).

The Court construed Coogle's letter as a § 2255 motion and ordered the United States to respond. (ECF Nos. 44, 45). The United States argues, in response, that Coogle cannot carry his burden of demonstrating ineffective assistance of counsel. (ECF No. 53 at 7). First, the United States contends that Coogle cannot show that he was prejudiced by Byers's alleged failure to allow him to correct what he perceived to be factual errors in the presentence report, because the Court permitted Coogle to assert his objections to the presentence report during the sentencing hearing. (*Id*. at 9-10). Second, regarding Coogle's allegation that Byers was not prepared to discuss Coogle's indigency during sentencing and had to consult with Coogle's wife regarding their assets, the government notes that Coogle again suffered no prejudice because the Court found that Coogle was indigent and did not impose the special assessment. (*Id*. at 10). With respect to Coogle's claim that Byers pushed him into pleading guilty, the United States points out that, in order to show prejudice, Coogle must show that but for Byers's deficient performance Coogle would have insisted on proceeding to trial. (*Id*.). The United States argues that, given the overwhelming evidence against Coogle and the lack of a viable defense, Coogle

5

cannot show that he would have insisted on going to trial. (*Id*.). Furthermore, the United States emphasizes that Coogle is bound by the statements he made under oath during his plea hearing when he indicated that it was his decision to plead guilty and he did so knowingly and voluntarily. (*Id*.).

The United States additionally explains that pleading guilty was beneficial to Coogle in a number of ways. (*Id*. at 11). First, as Coogle acknowledges, the United States could have sought a superseding indictment, charging Coogle with attempted production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e), based on Coogle's request that the minor provide him with a video similar to the live stream he sent of himself, naked and masturbating. (*Id*.). That charge would have carried a 15-year mandatory minimum sentence, as compared to the 10-year minimum sentence that Coogle faced for attempted enticement of a minor. (*Id*.). Second, if Coogle had insisted on going to trial, he likely would have received a longer sentence. According to the United States, by putting the minor through the trauma of a trial, Coogle would most probably have lost the benefit of having the minor's father seek mercy for Coogle at sentencing. Moreover, Coogle would not have received the guideline reduction for acceptance of responsibility. (*Id*.).

The United States argues that because Coogle cannot satisfy the prejudice prong, it is unnecessary to evaluate whether Byers's performance was objectively unreasonable. (*Id*. at 13). However, the United States asserts that, given the evidence against Coogle, it was appropriate for Byers to advise Coogle to plead guilty rather than risk a superseding indictment. (*Id*.). Furthermore, despite Coogle's complaints that Byers could have been better prepared for the sentencing hearing, the Constitution does not require the best possible performance by counsel, but rather objectively reasonable assistance, and the

6

information that Coogle wanted to present was ultimately presented despite Byers's alleged unpreparedness. (*Id.* at 13-14). Finally, regarding Coogle's statement that he waived his Rule 20 rights based upon the alleged promise that he would not be bound in West Virginia by the ten-year mandatory minimum sentence, the United States posits that such a claim is not one of ineffective assistance of counsel and, therefore, was waived by Coogle in his plea agreement. (*Id.* at 14). Furthermore, the Court addressed Coogle's confusion regarding the mandatory minimum sentence during Coogle's plea hearing, and Coogle stated that he still wished to plead guilty. (*Id.*).

As to the other issues raised, such as Byers sitting at the wrong table at Coogle's arraignment and refusing to accept jail phone calls, the government notes that Coogle stated under oath that his attorney fully developed the case with him, and he has not shown that either issue impacted his decision to plead guilty. (*Id.* at 11-12). Regarding the entrapment defense, the United States argues that evidence obtained in discovery revealed Coogle's other attempts to converse with minor females on Instagram and his impropriety with a seven-year-old child at church, showing his predisposition to commit the crime. The United States indicates that Coogle made several inappropriate statements to the minor before the UC/Minor took over the account, which also weighed heavily against an viable entrapment defense. (*Id.* at 12). In addition, regarding the lost character letters, Byers submitted numerous letters at sentencing; therefore, it is improbable that additional letters would have further reduced Coogle's sentence, which was already substantially below the advisory guideline range and only one month above the statutory minimum. (*Id.*).

In reply to the government's response, Coogle again emphasizes that he felt bound to follow Byers's instructions, because his contract of representation provided for

extra fees for long distance calls, travel, document copies, or the retention of a private investigator. (ECF No. 56 at 1). Coogle claims that he had already paid Byers $35,000.00 and could not afford to pay him more money, so financial concerns influenced him to follow Byers's lead. (*Id.* at 2). According to Coogle, "[n]ever being in a situation like this and not understanding the whole process, [he] assumed the representation by Mr. Byers was normal" and he responded in his hearing that it was full and fair. (*Id.*). However, "[a]fter doing some research," Coogle "realize[s] Mr. Byers was deficient." (*Id.*). Regarding the pre-sentence report, Coogle admits that the Court asked him if the report was factually accurate and that some of his changes were made, but he said that he was afraid to push any further because Byers told him that he would receive 23 years of imprisonment—the amount recommended by the probation officer—if he pushed for too many changes. (*Id.* at 3). Regarding his assets, Coogle states that any effective lawyer would have already known that information. (*Id.* at 4). In terms of pressure to accept a plea, Coogle states that Byers rushed him to sign the plea agreement, telling him that he would be charged with a superseding indictment, but never actually explained the other potential charges. (*Id.*).

On February 12, 2019, Coogle filed a motion to amend his § 2255 motion to add two additional claims of ineffective assistance of counsel. (ECF No. 57 at 1). First, Coogle claims that Byers failed to investigate anything regarding his case or interview anyone. (*Id.*). Coogle claims that "with a bit more effort and some investigation in [his] case, it would be shown that [Coogle] never took a substantial step which has to be shown to prove an attempt charge." (*Id.* at 2). In addition, Coogle states that, with more investigation, Byers could have proven that Coogle had no predisposition to commit the crime and would not have committed the crime if the UC/Minor agent had left him

alone. (*Id.*). Coogle asserts that Byers never took into account Coogle's mental health status before advising him to take the plea deal, although Byers knew that Coogle was physically, emotionally, and mentally exhausted from the circumstances of his incarceration and the publicity about his case, and that he had been prescribed Celexa for anxiety and depression. (*Id.* at 3).

Coogle also filed an affidavit, disputing the government's characterization of the facts and further arguing that he was induced by the UC/Minor to commit the crime and would never have done so on his own accord. (ECF No. 62). Coogle concedes that his messages "got out of line," and he "acted in a disgusting way and posted a live video of [him] pulling down [his] shorts and showing [his] penis." (*Id.* at 3, 5). However, he insists that the UC/Minor was the one who fostered the conversation. Coogle contends that he had no intention of attempting to entice the minor to engage in sex. (*Id.* at 3-4).

Finally, on October 20, 2019, Coogle filed another document, requesting to amend his § 2255 motion to add an additional claim of actual innocence. (ECF No. 63). He noted that 18 U.S.C. § 2422(b), the statute under which he was convicted, does not prohibit all communications with a minor, or even communications with a minor regarding sexual activity. (*Id.* at 2). Rather, it only proscribes communications that persuade, induce, entice, or coerce a minor to engage in sexual activity. (*Id.*). Coogle reiterates that the UC/Minor induced Coogle to commit the crime when he had no predisposition to do so. (*Id.*). Coogle claims that his initial messages, complimenting what he referred to as a "family photo" of the minor and other individuals at the beach and his statements asking the minor not to tell anyone what he said, were not inappropriate or illegal, and he stopped contacting the minor because she did not respond. (*Id.* at 3). Coogle stated that when the UC/Minor took over the account and

sent a "flirtatious emoji" of a heart, Coogle was drawn back into conversation. (*Id.*). Coogle claims that the UC/Minor should have stopped communicating when it did not look like Coogle was going to commit a crime. (*Id.*). Coogle states that the UC/Minor steered the conversation down inappropriate paths, and Coogle had no predisposition to commit the crime, which amounted to government entrapment. (*Id.* at 4). In terms of predisposition, Coogle admits that he was accused to touching a minor's thigh at church, but claims that the story was exaggerated, stating that he unintentionally touched the young girl's knee and quickly cleared it up with the girl's parents and the church elders when he was confronted. (*Id.*). Also, Coogle states that any of his Instagram conversations with other minors were short and "nowhere close to being out of line." (*Id.* at 5). Overall, Coogle stresses that the UC/Minor worked to keep the conversation going and used the topic of sex. (*Id.* at 7). Coogle claims that such a method of tempting innocent persons into violations to obtain a conviction is simply not fair. (*Id.*). In addition to entrapment, Coogle argues that the government could not prove the case against him, because there was nothing to show his intent to entice a minor to engage in sexual activity, nor was there a substantial step toward enticing a minor to engage in sexual activity. (*Id.* at 8). Coogle adds that he never agreed upon a time, date, or location for sex; never went to a meeting location; and never bought a hotel room or bus tickets, such as is often used to demonstrate a substantial step. (*Id.* at 9). In terms of arranging to meet, Coogle claims that he is "fairly certain" that the prosecution added the message about the minor visiting "in October" to show a substantial step, because Coogle does not recall typing that message, and it does not sound like something that he would write. (*Id.* at 10).

## II.  <u>Standard of Review</u>

A motion made pursuant to 28 U.S.C. § 2255 is a collateral attack on a conviction or sentence that was entered in a separate proceeding. To succeed on such a motion, the movant must prove that the conviction or sentence was imposed in violation of the laws or Constitution of the United States; the court imposing the sentence lacked jurisdiction; or the sentence exceeded the maximum authorized by law; or the sentence was otherwise subject to collateral attack. 28 U.S.C. § 2255. "A motion collaterally attacking a prisoner's sentence brought pursuant to § 2255 requires the petitioner to establish his grounds by a preponderance of the evidence." *Sutton v. United States of America,* No. 2:02-CR-65, 2:05-CV-91, 2006 WL 36859, at *2 (E.D. Va. Jan. 4, 2006).

Pursuant to the Rules Governing Section 2255 Proceedings, the court should conduct a preliminary review of the motion. *See* Rule 4. The court may then order the respondent to answer the motion and may authorize the parties to conduct discovery; the court may also direct the parties to expand the record as necessary to properly assess the validity of the motion. *See* Rules 5, 6, and 7. Once these steps are completed, the court must review the answer, transcripts, records of prior proceedings, and any other materials submitted to determine whether an evidentiary hearing on the motion is warranted. *See* Rule 8(a). If the movant is clearly unable to state a claim that entitles him to relief, the court may deny the motion without an evidentiary hearing. *Raines v. United States,* 423 F.2d 526, 529 (4th Cir. 1970).

## III.  <u>Discussion</u>

Coogle's § 2255 motion raises three discernable challenges. First, Coogle claims that he is actually innocent of the crime of which he was convicted. Second, Coogle challenges the fact that he did not receive less than the statutory minimum sentence.

Third, Coogle asserts numerous claims of ineffective assistance of counsel. Each claim is considered below, in turn.

### A. Actual Innocence

Actual innocence claims can be presented in two ways on habeas review. First, the Supreme Court of the United States ("Supreme Court") established in *Schlup v. Delo*, 513 U.S. 298 (1995), that a federal court can consider claims that would otherwise be procedurally barred if a petitioner offers new evidence that would have made it "more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Schlup* at 327. To be credible, a *Schlup* gateway claim requires new reliable evidence "whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Id.* at 324.

Second, many habeas petitioners and movants also raise freestanding actual innocence claims. The Supreme Court has "not resolved whether a prisoner may be entitled to habeas relief based on a freestanding claim of actual innocence" outside of the capital context. *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013). Importantly, a habeas petitioner or movant "must demonstrate actual factual innocence of the offense of conviction, i.e., that [he] did not commit the crime of which he was convicted; this standard is not satisfied by a showing that [he was] legally, but not factually, innocent." *United States v. Pettiford*, 612 F.3d 270, 282 (4th Cir. 2010).

In this case, there are several barriers to Coogle's claim of actual innocence. The first barrier is that Coogle pled guilty to violating 18 U.S.C. § 2422(b). (ECF Nos. 53-1 at 15-68). "[A] guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges." *Curry v. United States*, No. 3:16-CR-74-MOC-DSC-2, 2019 WL 6833892, at *8 (W.D.N.C. Dec. 13, 2019) (quoting *United*

*States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993)). Therefore, following a guilty plea, a defendant may not "raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea." *Id.* (quoting *Blackledge v. Perry*, 417 U.S. 21, 29-30 (1974)). Rather, the defendant is limited "to attacks on the voluntary and intelligent nature of the guilty plea, through proof that the advice received from counsel was not within the range of competence demanded of attorneys in criminal cases." *Id.*

The second barrier is that Coogle waived in his plea agreement his right to appeal or collaterally attack his conviction, except on the basis of ineffective assistance of counsel. (ECF No. 53-1 at 4-5). "It is well established that a defendant may waive his right to appeal or collaterally attack his conviction and sentence if the waiver was entered into knowingly and voluntarily." *Cousins v. United States*, No. CR 5:11-00090-23, 2015 WL 9595625, at *3 (S.D.W. Va. Dec. 3, 2015), *report and recommendation adopted,* 2016 WL 51265 (S.D.W. Va. Jan. 4, 2016) (citations omitted). "Generally the waiver is valid and enforceable, if a court fully questions a defendant regarding the waiver of his right to appeal during the Rule 11 colloquy." *Id.*; (ECF No. 53-1 at 15-68).

Finally, the third barrier is that Coogle never appealed his conviction on the basis that he was innocent. "Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *Fuller v. United States*, No. 4:13-CR-00072, 2018 WL 3398129, at *2 (E.D. Va. July 11, 2018) (quoting *United States v. Vaughn*, 955 F.2d 367, 368 (5th Cir. 1992)). For that reason, "[m]otions under § 2255 'will not be allowed to do service for an appeal.'" *Fuller*, 2018 WL 3398129, at *2 (quoting *Sunal v. Large*, 332 U.S. 174, 178 (1947)). "[I]ssues

that might have been, but were not, raised on direct appeal may not be raised subsequently in a § 2255 motion." *Id.* (citing *Sanders v. United States*, 230 F.2d 127 (4th Cir. 1956), *cert. denied*, 351 U.S. 955 (1956)). "[W]aived claims are procedurally defaulted absent a showing of cause and actual prejudice." *Hernandez Portillo v. United States*, No. 1:07-CR-00081-GBL, 2014 WL 3615815, at *7 (E.D. Va. July 17, 2014) (citing *United States v. Frady,* 456 U.S. 152, 167 (1982)). "To obtain collateral relief based on trial errors to which no contemporaneous objection was made, a convicted Petitioner must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains.'" *Id.* A § 2255 movant "can only overcome this procedural bar if he can show a fundamental miscarriage of justice "in an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent ... even in the absence of a showing of cause for the procedural default.'" *Id.* (quoting *Murray v. Carrier,* 477 U.S. 478, 496 (1986)).

Notwithstanding all of the above legal standards, the United States Court of Appeals for the Fourth Circuit ("Fourth Circuit") has stated that a claim of actual innocence is not waived by a defendant's guilty plea or appellate waiver, and it is thus not procedurally defaulted. *United States v. Courtade*, 929 F.3d 186, 190–91 (4th Cir. 2019). In *Courtade*, the § 2255 movant argued that he was "actually innocent of possession of child pornography because the video of Jane Doe showering [did] not depict a minor engaging in 'sexually explicit conduct' under 18 U.S.C. § 2252(a)(4)(B)." *Id.* at 190. He reasoned that, because he was actually innocent, his procedural default should be excused, and his guilty plea deemed invalid and vacated. *Id.* The Fourth Circuit noted the government's argument that the movant could not pursue an actual innocence claim due to his guilty plea and appellate waiver in his plea agreement. *Id.*

14

However, the Fourth Circuit stated that its case law indicated otherwise, and it proceeded to consider the claim on the merits. The Court ultimately found that the movant failed to show that it was "more likely than not that no reasonable juror would have convicted him," and the Court determined that the movant's actual innocence claim failed. *Id*. at 193-94.

Therefore, finding that Coogle's claim is not procedurally barred, the undersigned turns to the substance of Coogle's argument that he is actually innocent. Coogle contends that "the undercover agent induced [him] to make the statements that he made and [he] had no predisposition" to commit the crime. (ECF No. 63 at 2).  Coogle also asserts that the government could not prove the essential elements of intent or substantial step. (*Id*. at 8). At the outset, it appears that Coogle's actual innocence primarily argues legal, rather than factual, insufficiencies, and Coogle certainly does not offer any new evidence to demonstrate his factual innocence. Nevertheless, considering the merits of Coogle's actual innocence claim, he fails to show that it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt.

Coogle was convicted of attempted enticement of a minor in violation of 18 U.S. Code § 2422(b), which states:

> Whoever, using the mail or any facility or means of interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States knowingly persuades, induces, entices, or coerces any individual who has not attained the age of 18 years, to engage in prostitution or any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined under this title and imprisoned not less than 10 years or for life.

"To obtain a conviction under this provision, the government must prove that the defendant: (1) used a facility of interstate commerce; (2) to knowingly entice or attempt to entice any person under the age of 18; (3) to engage in illegal sexual activity." *United*

*States v. Clarke*, 842 F.3d 288, 297 (4th Cir. 2016) (internal citation and markings omitted). In order to prove attempt under the statute, "the government must prove beyond a reasonable doubt, that (1) [the defendant] had culpable intent to commit the crime and (2) he took a substantial step towards completion of the crime that strongly corroborate[d] that intent." *Id*. Violation of the statute does not require an actual minor victim, and it is often used in sting operations, like the present case, in which law enforcement poses as a minor victim. *United States v. Kaye*, 451 F. Supp. 2d 775, 781 (E.D. Va. 2006), *aff'd,* 243 F. App'x 763 (4th Cir. 2007) ("The statute's primary focus is on adults using the Internet to seek out and persuade minors to meet for the purpose of engaging in sexual activity. The statute is often used in the context of sting operations that involve adults posing as minors in an Internet "chat session." Many defendants have challenged this use of the statute, claiming that an "actual minor" as a victim is required. However, every Court of Appeals to address this issue has uniformly upheld this use of the statute and that an "actual minor" is not required.").

### 1. Intent

Coogle argues that he did not have the requisite intent to commit the crime because he never intended to carry out any sexual acts with the minor or secure her assent to engage in sex. (ECF Nos. 42 at 4, 63 at 8). However, the intent element of the statute only requires that the defendant "knowingly attempt to convince the minor to achieve the mental state of assenting to his sexual proposals, even if he never formed the intent to actually carry through with the in-person sexual acts." *Jeffries v. United States*, No. 4:15-CR-00083, 2018 WL 4903267, at *11 (E.D. Va. Oct. 9, 2018), *appeal dismissed,* 763 F. App'x 326 (4th Cir. 2019); *United States v. Kokayi*, No. 1:18-CR-410 (LMB), 2019 WL 2028517, at *3 (E.D. Va. May 8, 2019). Therefore, it was irrelevant whether Coogle

intended to carry out any physical activity with the minor.

### 2. Substantial step

Coogle further argues that he never made a substantial step toward completion of the crime that corroborated his intent. (ECF No. 63 at 8). He points out that he never arranged a meeting place with the minor, traveled to an agreed location for sex, reserved a hotel room or bus tickets, or performed other similar activities that constitute a substantial step in many sting operations under § 2422(b). (*Id.* at 8-9). Coogle claims that treating mere speech, even obscene speech, as the "substantial step" element would abolish the substantial step requirement. (*Id.* at 9).

Like other § 2255 movants, Coogle seeks to rely on out-of-circuit cases to demonstrate that an active step beyond internet communication is required to prove the "substantial step" element. *Jeffries*, 2018 WL 4903267, at *11. However, the law of this circuit explains that § 2422(b) "was designed to protect children from the act of solicitation itself." *Id.* (quoting *United States v. Engle*, 676 F.3d 405, 419 (4th Cir. 2012)). "Because the minimum required 'goal' of a § 2422(b) enticement crime, as defined by the Fourth Circuit, is for the perpetrator to succeed in altering the minor's mental state and secure his or her assent, online communications alone can be sufficient to constitute the necessary substantial step." *Id.* (citing *Engle*, 676 F.3d at 423).

Coogle admitted in his plea agreement and under oath during his plea hearing that he, a resident of North Carolina, used an internet-based application, Instagram—a facility of interstate commerce—to send direct messages to a 13-year-old minor, who resided in West Virginia. (ECF No. 53-1 at 9, 37). In the conversations, Coogle confirmed the minor's age and made statements to the UC/Minor such as, "[w]ell, I think that it third base. But I wanna go homerun." (ECF No. 53-1 at 10, 38-39). He discussed

17

becoming the minor's first sexual partner, that he often thought of "feeling [her] on [him]," that he wanted "to see all of [her]," stating "[l]et me see!" and responding with four smiley faces when the UC/Minor asked Coogle if he meant that he wanted to see her naked. (*Id.* at 11, 39-41). Coogle told the UC/Minor that their conversations about what they would do when the minor came to visit in October gave him an erection. (*Id.* at 12, 41). He sent a message stating, "I want to give this to you," and then live-streamed to the UC/Minor a video of himself fondling his erect penis. (*Id.* at 12, 41-42). Coogle requested live videos of the minor in return and asked, "show me what I type or take a photo of you touching it!!" (*Id.* at 12, 42).

Communications such as sending an image of the person's exposed, erect penis to a minor; proposing that the minor send a picture of her feeling or fondling her genitalia; and soliciting nude photos or videos of the minor have been found to establish the required elements of attempted enticement of a minor in violation of § 2422(b). *See, e.g., Jeffries*, 2018 WL 4903267, at *12. Coogle now disputes the government's characterization of some of the facts, stating that he did not *explicitly* tell the minor that he wanted to be her first sexual partner or ask her to send nude photographs, and, while he did send the live video of him exposing his penis, he claims that he was not masturbating in the video. (ECF No. 62 at 9). He also argues that he is "fairly certain" that the prosecution or "someone with the government" added the statement about the minor coming to visit "in October" to make it look like he was taking a substantial step toward meeting with her, because Coogle does not recall typing "in October" and it does not "look like something [he] would actually type in a sentence." (ECF No. 63 at 10).

Unfortunately for Coogle, his revisionist history does not overcome his prior statements made under oath. *Lemaster,* 403 F.3d 216 at 221-222. Nor do his current

18

protestations of innocence alter the binding nature of the stipulation of facts, which Coogle affirmed as true, again while under oath.   (ECF No. 53-1 at 36-43, 65). In addition, Coogle offers nothing to contradict the veracity of the government's evidence to support the charge against him. Even under his present version of the facts, Coogle admits that he contacted a 13-year-old child on Instagram to compliment a picture of her in a bathing suit and, when she did not respond, he apologized and "may have" told her not to tell anyone. (ECF No. 62 at 2). He concedes that he became careless, that his messages to the minor got "out of hand," and that he sent a video-stream of himself, naked and  exposing his erect penis, to a 13-year-old child. (*Id*. at 3). While Coogle now attempts to reframe the communications more innocently, and claims that the transcript of his Instagram chats was altered by the government, this § 2255 motion is not an opportunity for him to relitigate the stipulated facts. Coogle fails to show any evidence, much less new evidence, that he is innocent of violating 18 U.S. Code § 2422(b).

### 3.  Entrapment

Coogle further argues that he had a valid entrapment defense, because the undercover agent induced him to engage in the conversation, and he had no predisposition to commit the crime. (ECF No. 63 at 2). He asserts that he stopped communicating after his initial messages to the minor until the UC/Minor reinitiated the conversation with a "flirtatious" heart emoji, which Coogle maintains is commonly understood to connote "sexual intercourse." (ECF No. 63 at 3). Coogle claims that, even then, he did not respond inappropriately, but "[t]he agent continuously kept the conversation going" and "steered the conversation to inappropriate paths." (*Id*. at 4). Coogle is adamant that he had no preposition to commit the crime charged. (*Id*.). In his view, the facts show that he "was an innocent law-abiding citizen, loving father of four,

hard-working employee an educated man and if left alone, with no goal of the government to implant a criminal design to get a conviction, [he] would never ha[ve] taken a criminal path." (*Id.* at 11).

"To establish entrapment, a defendant must first demonstrate the government induced him to engage in the criminal activity. *United States v. McLaurin*, 764 F.3d 372, 380 (4th Cir. 2014). Once the defendant has shown government inducement, the burden shifts to the government to prove beyond a reasonable doubt the defendant's predisposition to have engaged in the criminal conduct. *United States v. Jones*, 976 F.2d 176, 179 (4th Cir. 1992)." *United States v. Young*, 916 F.3d 368, 375–76 (4th Cir.), *cert. denied,* 140 S. Ct. 113 (2019). "To show inducement, a defendant must show 'governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." *Vinci v. United States*, No. 5:15-CR-41-RLV-DCK-1, 2017 WL 1954541, at *4–5 (W.D.N.C. May 10, 2017) (quoting United *States v. Daniel*, 3 F.3d 775, 778 (4th Cir. 1993)). "Inducement requires more than mere solicitation by the Government," and "[t]he Government's behavior must be 'so inducive to a reasonably firm person as likely to displace mens rea."). *Id.* (quoting *United States v. Hsu*, 364 F.3d 192, 198 (4th Cir. 2004)). "Predisposition 'focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime."" *Young*, 916 F.3d at 375–76 (quoting *Mathews v. United States*, 485 U.S. 58, 63 (1988)).

Coogle fails to establish entrapment. He admittedly initiated contact with the minor, confirmed that she was only 13 years old, and then sent her the explicit video of himself. Similar claims of government inducement have been denied by other district courts in this circuit. For example, in *Fernando v. United States*, a § 2255 movant argued

that his counsel was ineffective because he did not seek an entrapment instruction. *Fernando*, No. 1:07CR38-1, 2011 WL 1375596, at *7 (M.D.N.C. Apr. 12, 2011), *report and recommendation adopted,* 2013 WL 766310 (M.D.N.C. Feb. 28, 2013). The Court noted, "Detective Overcash did nothing more than create a screen name and profile and enter a chat room. Petitioner approached her in the chat room, Petitioner brought sex into the conversation, Petitioner sent her a nude photograph, and Petitioner suggested that they meet and engage in sexual activities. He did these things after she told him she was 14 years old." *Id.* The Court concluded that the movant "was not pushed, forced, or enticed into any sexual misconduct with [the detective]." *Id*. Rather, "[h]e was the initiator." *Id*. As such, the Court concluded that the movant could not show error or prejudice as to this claim. *Id*. Even in cases in which authorities initiated the conversation with the defendant, courts have declined to find entrapment. *Vinci v. United States*, No. 5:15-CR-41-RLV-DCK-1, 2017 WL 1954541, at *5 (W.D.N.C. May 10, 2017) (stating that the movant waived his entrapment claim by pleading guilty, but even if he could raise such claim, it would fail because although the government initiated the contact, the movant introduced the topic of sex, actively requested sexy video and nude photographs of who he believed was a 15-year-old girl, and suggested meeting for sex).

Furthermore, assuming *arguendo* that Coogle could demonstrate inducement, the government asserts that it has evidence of his predisposition to commit the crime, such as him previously touching a minor's thigh at church, initiating internet contacts other minor females, and making inappropriate comments to the minor in this case before the undercover agent took over her account. (ECF No. 53 at 12); *see also* (ECF No. 53-1 at 115) (discussing at sentencing the fact that Coogle was found with his hand on the thigh of a 7-year-old at church, attempted to open up communication with other

minors, and tried to establish a sexual relationship with the victim in this case). Coogle claims that the accusation that he touched a minor when he was volunteering in the youth ministry at Church "was exaggerated and twisted to make it look inappropriate." (ECF No. 63 at 4). Nevertheless, Coogle admits that he was accused of inappropriately touching the minor. (*Id.*). Moreover, Coogle does not dispute that he communicated with other minors on Instagram, although he claims the conversations were short and appropriate. He concedes, however, that he reached out to the 13-year-old minor in the present case on his own volition and complimented her family photograph in which she was wearing a bikini, then apologized, and asked her not to tell anyone what he said. (ECF No. 62 at 2).

For all of the above reasons, the undersigned **FINDS** that Coogle's actual innocence claim fails on the merits.

### B. *Mandatory Minimum Sentence*

Coogle asserts as a ground in his § 2255 motion that he intended to plead guilty in North Carolina, but he was advised by the government that he could receive less than the mandatory minimum sentence if he came to West Virginia. (ECF No. 42 at 7). Coogle apparently refers to a matter that he raised at his plea hearing, which was his claim that he forfeited his opportunity to remain in North Carolina under Rule 20 of the Federal Rules of Criminal Procedure, because the government promised his federal public defender that Coogle could receive less than the statutory minimum if he proceeded with the case in West Virginia. (ECF No. 53-1 at 26-27).

This matter was expressly discussed and cleared up during Coogle's plea hearing. When Coogle raised the issue, the Court recessed and allowed him to speak to counsel. (*Id.*). When the hearing resumed, Coogle stated that he understood that he faced a ten-

year statutory minimum sentence under the plea agreement, and he nevertheless wished to proceed with the agreement and plead guilty. (*Id.* at 28-29).

Despite the fact that Coogle made the above representations under oath, he now again raises the issue that he was promised a sentence below the statutory minimum. There are several obstacles to this claim. First, to the extent that Coogle challenges the sentence that he received, the claim is procedurally defaulted because he makes no showing of cause and prejudice for his failure to raise his sentencing claim in a direct appeal. In addition, Coogle waived in his plea agreement the right to challenge his sentence unless it exceeded this statutory maximum, or the Court applied an upward variance, neither of which occurred. (ECF No. 53-1 at 4-5).

The Court explicitly advised Coogle during his plea hearing that he was pleading guilty to a charge which imposed a ten-year statutory minimum sentence, and the Court could not sentence him to less than that period of imprisonment, and the Court could potentially impose a more severe sentence as much as life imprisonment. (ECF No. 53-1 at 28-29, 32, 55). The Court also specifically explained to Coogle the effect of the appellate and collateral attack waivers in his plea agreement, including the fact that he could not challenge his sentence if it was below the statutory maximum and if the Court did not apply an upward variance. (*Id.* at 44-47). Coogle stated that he understood and wished to proceed with the plea agreement. (*Id.*). The Court indeed imposed a sentence that was well below the statutory maximum sentence of life imprisonment and the Court substantially departed downward from the advisory guidelines, imposing a sentence of imprisonment that was only one month more than the minimum allowed by statute. Therefore, the undersigned **FINDS** that Coogle's challenge to his sentence is procedurally barred, and Coogle's written plea agreement and statements during the

Rule 11 guilty plea hearing establish that Coogle knowingly and intelligently waived his right to challenge his sentence in this § 2255 proceeding.

### C. Ineffective Assistance of Counsel

Next, turning to Coogle's claims against Byers, when a movant alleges ineffective assistance of counsel under § 2255, the movant claims a violation of rights guaranteed by the Sixth Amendment to the United States Constitution. *Strickland v. Washington,* 466 U.S. 668, 680 (1984). Under *Strickland,* a criminal defendant can prove ineffective assistance of counsel by meeting the requirements of a two-pronged test. *Id.* at 687. The defendant carries the burden of satisfying both prongs of the test, and "a failure of proof on either prong ends the matter." *United States v. Roane,* 378 F.3d 382, 404 (4th Cir. 1994).

First, the defendant must show that counsel's representation fell below an objective standard of reasonableness. *Strickland,* 466 U.S. at 687-88. When evaluating counsel's performance under the first prong of *Strickland,* "[j]udicial scrutiny of counsel's performance must be highly deferential." *Strickland,* 466 U.S. at 689. Thus, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation marks omitted). The inquiry under *Strickland* is "whether an attorney's representation amounted to incompetence under prevailing professional norms, not whether it deviated from best practices or most common custom." *Harrington v. Richter,* 562 U.S. 86, 88 (2011).

Second, the defendant must show that he was actually prejudiced by the ineffective assistance of counsel. *Strickland,* 466 U.S. at 687. To establish actual

24

prejudice from counsel's deficient performance, "[p]etitioner must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment.'" *DeCastro v. Branker,* 642 F.3d 442, 450 (4th Cir. 2011) (citing *Harrington,* 131 S.Ct. at 787)); *see also, Strickland,* 466 U.S. at 687. It is insufficient for the defendant "to show that the errors had some conceivable effect on the outcome of the proceeding," because "[v]irtually every act or omission of counsel would meet that test." *Strickland,* 466 U.S. at 693. Rather, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

In the context of a guilty plea, the movant carries a heavy burden under § 2255. By entering a guilty plea, the criminal defendant "has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged." *Tollett v. Henderson,* 411 U.S. 258, 267 (1973). Therefore, a guilty plea "represents a break in the chain of events which has preceded it in the criminal process." *Id.* Statements made during a hearing to accept a guilty plea are afforded a strong presumption of veracity and subsequent attacks that contradict these statements may generally be dismissed as frivolous. *U.S. v. Lemaster,* 403 F.3d 216, 221-222 (4th Cir. 2005). As the Fourth Circuit explained:

> [A] defendant's solemn declarations in open court ... carry a strong presumption of verity ... because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 plea colloquy. ... Thus, in the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.

*Id.*

As such, a criminal defendant is precluded from raising alleged constitutional deprivations that occurred prior to pleading guilty and "may only attack the voluntary and intelligent character of the guilty plea" by demonstrating that his counsel's performance was inadequate under the Sixth Amendment. *Tollett,* 411 U.S. at 267; *see also*, *Fields v. Attorney General of State of Md.,* 956 F.2d 1290, 1296 (4th Cir. 1992) ("A guilty plea does not bar collateral review of allegations of ineffective assistance of counsel in so far as the alleged ineffectiveness bears on the voluntariness of the guilty plea."). In other words, the movant under § 2255 must not only rebut the presumption that counsel performed within the wide range of reasonable professional competence, but the defendant must also demonstrate that "there is a reasonable probability that, but for counsel's errors, [movant] would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart,* 474 U.S. 52, 59 (1985).

### 1. Presentence Report

Coogle first asserts that Byers was constitutionally deficient because he did not allow Coogle to make changes to his presentence report before Byers submitted it. However, as correctly noted by the government, this issue was remedied during Coogle's sentencing hearing. The Court questioned Coogle if the report was factually correct, and Coogle responded "[f]or the most part, it is, sir." (ECF No. 53-1 at 79). Noting Coogle's reluctance, the Court recessed the hearing specifically for Coogle to go over the report with Byers and advise the Court what was not accurate. (*Id.*). When the hearing resumed, Byers advised the Court of three additional objections to the report that Byers wished to assert. (*Id.* at 79-83). The Court then asked Coogle if the report was in all other

respects factually correct, and Coogle responded, "[y]es, Your Honor." (*Id.* at 83). Coogle was under oath during his sentencing hearing. (*Id.* at 71).

After the government filed its response arguing lack of prejudice, Coogle now insinuates that he was not able to assert all of his challenges to the report. He states that "Byers told [him] that he would get the twenty-three years recommended by the probation officer if [Coogle] pushed for too many changes." (ECF No. 56 at 3). He continues, stating that any professional lawyer would have met with his client to go over the presentence report before sending it to the probation officer. (*Id.*). However, Coogle does not identify inaccuracies that had any conceivable effect on his sentence. Therefore, even if Byers's performance was deficient in failing to confer with Coogle prior to submitting the report, Coogle does not demonstrate that he suffered any prejudice. *United States v. Faulkner*, No. 3:17-CR-00045, 2019 WL 1579593, at *4 (E.D. Va. Apr. 12, 2019) (citing *United States v. Butler*, 331 F. App'x 260, 261 (4th Cir. 2009)) ("Critically, however, Faulkner does not identify a single inaccuracy that his attorney failed to correct, much less indicate how any inaccuracy affected his sentence.").

### 2. Questions During Sentencing

Coogle next argues that Byers was ineffective because he had to consult with Coogle's wife during sentencing to respond to "basic questions" from the Court regarding Coogle's assets, and Coogle claims that any effective lawyer would have already known the information. (ECF Nos. 42 at 7-8, 56 at 4). Again, Coogle fails to establish prejudice. In considering whether to impose the $5,000 special assessment, the Court questioned Byers concerning Coogle's indigency, and Byers consulted Coogle's wife regarding the balance of their joint savings account. (ECF No. 53-1 at 98). The Court ultimately did not impose the $5,000 special assessment. (*Id.* at 100). Therefore, the

outcome was the same as if Byers had been more prepared to answer the questions regarding Coogle's assets.

### 3. Plea Agreement

Coogle asserts that Byers pushed him into accepting a plea by stating that Coogle could not win at trial and could be charged with a superseding indictment. (ECF No. 42 at 7). Coogle states that Byers never explained to him what the additional charges would be, nor did he consider Coogle's mental health before advising him to plead guilty. (ECF Nos. 56 at 4, 57 at 3). Coogle claims that he felt bound to follow Byers's instructions because his family had already paid Byers a sizeable retainer, and they would be contractually obligated to pay him more if the case progressed, which they could not afford. (ECF No. 56 at 1).

"When evaluating objective reasonableness under the prejudice prong of *Strickland,* the challenger's subjective preferences ... are not dispositive; what matters is whether proceeding to trial would have been objectively reasonable in light of all of the facts." *Christian v. Ballard*, 792 F.3d 427, 452–53 (4th Cir. 2015) (markings and citation omitted). In other words, Coogle cannot satisfy *Strickland* "merely by telling the court now that he would have gone to trial then if he had gotten different advice" from Byers. *Id.* Rather, Coogle must "convince the court that a decision to reject the plea bargain would have been rational under the circumstances." *Id.*

Starting with Coogle's claim that he felt compelled to plead guilty, because his attorney was expensive, this contention is irrelevant to an analysis of ineffective assistance of counsel. An attorney is not ineffective for charging a client fees, costs, and incidental expenses. Coogle was well aware that he was entitled to the appointment of counsel if he could not afford to retain an attorney. Indeed, Coogle started with a court-

appointed lawyer and then voluntarily chose to switch to Byers. (ECF No. 53-1 at 31). Consequently, any compulsion Coogle felt to limit the costs associated with retained counsel was of his own making and certainly does not provide a basis for a § 2255 motion.

Coogle further asserts that Byers did not consider Coogle's mental state in advising him to take a plea. He claims that he was "mentally drained" from being moved from jail to jail, which he claims was intended to "burn [him] out." (ECF No. 42 at 8). He adds that the constant movement was taking a toll on his family and was causing him to just wanted it all to be over. Coogle contends that Byers knew that Coogle was physically, emotionally, and mentally exhausted from the circumstances of his incarceration and publicity about his case, and he was put on Celexa for anxiety and depression. (ECF No. 57 at 3).

In terms of a defendant's mental competence to enter a guilty plea, the standard is the same as a defendant's competence to stand trial. *Godinez v. Moran*, 509 U.S. 389, 397-99 (1993). The defendant must have "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and "a rational as well as factual understanding of the proceedings against him." *Id.* at 396 (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)). Not every manifestation of mental illness or defect demonstrates incompetence to stand trial or plead guilty; rather, the evidence must indicate that the defendant has a present inability to assist counsel or understand the charges. *Beck v. Angelone*, 261 F.3d 377, 387 (4th Cir. 2001) (citation and markings omitted). "An attorney's duty, of course, does not mandate the exploration of the issues of sanity and/or competency in every instance." *Wood v. Zahradnick*, 430 F. Supp. 107, 111 (E.D. Va. 1977), *aff'd* 578 F.2d 980 (4th Cir. 1978). Instead, defense counsel's

responsibility to investigate his client's competency arises only when "the facts known and available, or with minimal diligence accessible, to defense counsel raise a reasonable doubt as to a defendant's mental condition." *Id.*

Here, Coogle does not offer any evidence that his behavior, communications with the court or counsel, or psychiatric history raised a reasonable doubt regarding his mental competency. Furthermore, Coogle fails to show that he was prejudiced by Byers not addressing his mental competency because there is not a reasonable probability that the Court would have granted a competency hearing, much less concluded that Coogle was unable to consult with Byers with a reasonable degree of rational understanding and comprehend the proceedings against him. Coogle's conduct during his plea and sentencing hearings clearly demonstrate that he appreciated the charges that he faced and participated in his defense. (ECF No. 53-1 at 15-120). "Solemn declarations in open court carry a strong presumption of verity." *Hernandez*, 2018 WL 3381429, at *6 (quoting *Blackledge v. Allison*, 431 U.S. 63, 74 (1977)). Coogle's demeanor, interaction, and responses during his hearings plainly contravene any assertion that he was incompetent to plead guilty, and he fails to offer any indication that his counsel was deficient in failing to consider his mental competency.

Considering all of the other issues raised by Coogle, it is clear that Coogle does not offer any evidence that Byers misled him or unduly coerced him into signing the plea agreement. Coogle shows no reasonable probability that if Byers had better explained the charges against him, his possible defenses, or the potential superseding indictment in more detail that a reasonable person would have proceeded to trial. Most importantly, it was prudent for Byers to recommend the plea deal and for Coogle to accept it. As discussed above, there was strong evidence against Coogle to substantiate the

indictment, and an entrapment defense was unlikely. Moreover, Coogle faced a potential sentence of 168 to 210 months imprisonment under the USSG. (ECF No. 53-1 at 116). In part due to Coogle's acceptance of responsibility, the Court applied a three-level downward variance, making the advisory range 121 to 151 months. (*Id*. at 117). The Court sentenced Coogle to 121 months of imprisonment, which was the lowest possible end of that range and just above the statutory minimum of 120 months. (*Id*. at 116-17). Therefore, Coogle reasonably received a much more favorable sentence than the Court would have imposed if Coogle proceeded to trial and was convicted. In addition, as the government mentioned in its brief, due to the plea deal, the government declined to charge Coogle with additional crimes relating to his conversations with the minor, such as violations of 18 U.S.C. §§ 2251(a) and (e) for attempted production of child pornography. As noted, Coogle stated elicited nude photographs from the minor. (ECF No. 53-1 at 11). Also, he requested the UC/Minor to send him sexually explicit images of herself. (*Id*. at 12). Therefore, Coogle avoided a lengthier statutory minimum sentence for attempted production of child pornography. In sum, Coogle does not present any claims of constitutional magnitude because he fails to show that his counsel's advice to plead guilty was unreasonable under the circumstances.

### 4. Other Issues

Coogle mentions other issues, such as the fact that his counsel sat at the wrong table during his arraignment, abandoned Coogle's entrapment defense once he saw the government's discovery materials, did not take Coogle's calls from the jail, did not spend extra time with Coogle as he promised, lost many of Coogle's character letters, and failed to investigate Coogle's case or interview anyone to prove entrapment and show that Coogle never took a substantial step to commit the crime. (ECF Nos. 42 at 2-3, 57 at 1-

2). However, Coogle fails to demonstrate that but for such alleged errors that he rationally would have rejected the plea agreement. As discussed, the government had evidence to demonstrate that Coogle violated 18 U.S.C. § 2422(b) and Coogle lacked a viable defense to the charge. Furthermore, Coogle received a sentence of only one month more than the statutory minimum sentence. Therefore, he fails to show that he suffered any prejudice due to his counsel's representation.

For all of the above reasons, the undersigned **FINDS** that Coogle fails to state a claim of ineffective assistance of counsel under *Strickland*.

### D. *Motion for Appointment of Counsel*

As noted, Coogle asked the Court to forward his § 2255 motion to a federal public defender. To the extent that Coogle seeks the appointment of counsel in this case the undersigned **FINDS** that the motion should be denied as moot because Coogle does not assert any potentially meritorious claim for relief under § 2255.

### IV.    <u>Proposal and Recommendations</u>

The undersigned **GRANTS** Coogle's Motion to Amend. (ECF No. 57). However, the undersigned respectfully **PROPOSES** that the presiding District Judge confirm and accept the foregoing findings and **RECOMMENDS** that Movant's § 2255 motion and motion for appointment of counsel, (ECF No. 42), be denied and this matter be **DISMISSED**, with prejudice, and removed from the docket of the court.

The parties are notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable John T. Copenhaver, Jr., United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and three days (if received by mail)

from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown. Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing party, Judge Copenhaver, and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to Movant and counsel of record.

**FILED:** February 11, 2020

Cheryl A. Eifert
United States Magistrate Judge