UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

TIMOTHY SEAN COOGLE,

      Movant,

v.                                            Civil No. 2:18-cv-01291
                                              Criminal No. 2:17-cr-00167-01

UNITED STATES OF AMERICA,

      Respondent.

<u>MEMORANDUM OPINION AND ORDER</u>

      Pending is the movant's <u>pro se</u> Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody pursuant to 28 U.S.C. § 2255 and request for appointment of counsel, filed September 7, 2018, and motion for an evidentiary hearing, filed February 27, 2020. ECF Nos. 42, 71.

      This action was previously referred to the Honorable Cheryl A. Eifert, United States Magistrate Judge, for submission to the court of her Proposed Findings and Recommendation ("PF&R") for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). On February 11, 2020, the magistrate judge entered her PF&R recommending that the motion be denied, and that the civil action be dismissed from the court's docket. The movant filed objections on February 27, 2020, to which the United States did not respond.

Upon an objection, the court reviews a PF&R de novo. Specifically, "[t]he Federal Magistrates Act requires a district court to 'make a de novo determination of those portions of the [magistrate judge's] report or specified proposed findings or recommendations to which objection is made.'" Diamond v. Colonial Life & Accident Ins. Co., 416 F.3d 310, 315 (4th Cir. 2005) (emphasis in original) (quoting 28 U.S.C. 636(b)(1)).

## I.   Background

On January 14, 2018, the movant pled guilty in the above-cited criminal action to one count of attempted enticement of a minor, in violation of 18 U.S.C. § 2422(b).  ECF No. 53-1. As part of the plea agreement, the movant stipulated to the facts as addressed herein and waived his right to appeal or collaterally attack the conviction or sentence, except that he retained the right to appeal a sentence that exceeded the statutory maximum or included an upward variance from the United States Sentencing Guidelines (USSG), as well as the right to challenge his conviction and sentence on grounds of ineffective assistance of counsel.  The court held a thorough plea colloquy on January 31, 2018 before accepting the movant's guilty plea.

On May 17, 2018, the court sentenced the movant to 121 months imprisonment after applying a three-level downward

variance from the recommended 168-210 months.  The sentence amounted to just one month more than the statutory minimum sentence of 120 months.

The movant had met the victim, a 13-year-old minor female who resided in Kanawha County, West Virginia, when she visited her extended family who lived "two houses down" from the movant's home in North Carolina.  Id. at 37.  The minor reportedly visited her relatives three or four times per year, and she played with the movant's children and interacted with the movant during those visits, as the neighboring families were "close" friends.  Id. at 63-64.  On or about August 12, 2017, the movant, who resided in North Carolina, sent a direct message on the cell phone application Instagram from his username, "sean_coogle," to the minor.  Id. at 9.  The movant asked the minor if she shared her Instagram account with anyone and then complimented a picture of her in a bikini at the beach stating that he "liked the picture."  Id. at 9.  He asked the minor not to tell anyone what he had said.  Id.

On or about August 29, 2017, the minor's mother discovered the messages on the minor's Instagram account.  Id. After discovering the messages, the mother contacted law enforcement.  Id.  The mother indicated that she was familiar with the movant, that he had met the family and her daughter on

3

prior occasions, and that he knew her daughter was a minor.  Id.
On August 31, 2017, a law enforcement officer (hereinafter
"UC/Minor") took over the minor's Instagram account and began
communicating with the movant in an undercover capacity.  Id.

In conversations with the UC/Minor, the movant
discussed the sexual activity that he wished to engage in with
the minor, stating that he wanted to be her first sexual
partner.  Id. at 10.  He confirmed that the minor was 13 years
old at the time they were communicating.  Id.  He told the minor
to wear the bikini from the picture when she came to visit in
October, adding that he wanted to "be the first to taste her,"
and stating that he liked that she was a virgin and
inexperienced, as he would teach her everything that she needed
to know regarding sexual activity.  Id.

On September 13, 2017, the movant sent the following
message to the UC/minor explaining his feelings for her: "Hey
baby! May be busy tonight, so I wanted to send you some
messages. [Minor's name.]  I never was attracted to anyone as
young as you. You are a first.  I think because you look older
and act mature.  You are so very beautiful and sexy.  I think of
spending time with you and having fun as well as think of
feeling you on me.  Just wanted to say that.  Can we do a

Facetime soon or trade some pictures or videos?  Something to
hold on to before we see each other."  Id.

On September 19, 2017, the movant urged the UC/minor
to send him explicit photos of herself, in the following
exchange:

sean_coogle: I want to see all of you

sean_coogle: BAD!!

sean_coogle: I'm getting that feeling

sean_coogle: Ya know???

sean_coogle: Let me see!

sean_coogle: Sorry! I was being bad! "Bad Boy Sean"

UC/Minor: No your fine haha

UC/Minor: Like see me naked?

sean_coogle: (Four smiley faces) Emojis.

sean_coogle: Where are you?

UC/Minor: Lol home

Id.  On September 20, 2017, following additional sexually
explicit conversations about the movant's sexual frustration and
what he wanted to do with the UC/minor when she came to visit
North Carolina, the movant sent the UC/Minor an 11-minute live
video stream of himself on the Instagram application in which he
removed his shorts and fondled his erect penis.  Id.  The movant

5

asked the UC/Minor to send similar live video of herself "touching it."  <u>Id.</u>

On September 26, 2017, a federal grand jury in this judicial district returned an indictment that charged the movant with using a facility of interstate commerce to attempt to entice a minor to engage in sexual activity in violation of 18 U.S.C. § 2422(b).  <u>Id.</u> at 14.  The movant was initially appointed a federal public defender in his criminal case, but he subsequently retained a North Carolina criminal defense attorney, J. Darren Byers ("Byers"), to represent him.  <u>Id.</u> at 31.  On January 14, 2018, the movant entered into a plea agreement with the government in which he agreed to plead guilty to the one-count indictment.  <u>Id.</u> at 1-13.

## II.  Objections

The movant raises six objections to the PF&R.  He objects to the finding that he took a substantial step in commission of the attempt, to the finding that he asked for or received the UC/minor's assent, to the finding that he was not entrapped, to the finding that he had a predisposition for committing the offense, to the finding that he had not shown ineffective assistance of counsel, and to the finding that he had not shown actual innocence.

The movant first objects that his communications with the UC/minor did not amount to a substantial step sufficient to corroborate his intent.  He contends that unlike in other §2422(b) cases, he never arranged a meeting place, traveled to an agreed location for sex, and that his speech alone is insufficient to constitute a substantial step.  He also argues that the messages do not show him steering the conversation towards sexual topics.

In the context of criminal attempt, "a substantial step is a direct act in a course of conduct planned to culminate in commission of a crime that is strongly corroborative of the defendant's criminal purpose."  United States v. Engle, 676 F.3d 405, 423 (4th Cir. 2012) (citing United States v. Pratt, 351 F.3d 131, 135 (4th Cir.2003)).  That inquiry focuses "on the actions already taken to complete the underlying crime, not on the acts that remain uncompleted and a court must assess how probable it would have been that the crime would have been committed—at least as perceived by the defendant—had intervening circumstances not occurred."  Id.  (internal citations omitted).  The Fourth Circuit in Engle held that while words and speech ordinarily fall short of a substantial step, in the context of a §2422(b) prosecution, words and speech will often suffice to show a substantial step.  Id.  As the court explained, "the very nature of the underlying offense—persuading, inducing or

enticing engagement in unlawful sexual activity—necessarily contemplates oral or written communications as the principal if not the exclusive means of committing the offense." Id. (quoting <u>United States v. Rothenberg</u>, 610 F.3d 621, 627 (11th Cir.2010)).

Courts have found the substantial step element established in §2422(b) cases in which any one of four factors are present: "(1) sexual dialog between Defendant and the 'minor;' (2) repeated references to what would be performed upon meeting the minor; (3) the transmission of a sexually suggestive photograph; and (4) travel by Defendant to meet the minor." <u>United States v. Kaye</u>, 451 F.Supp.2d 775, 787 (E.D. Va. 2006). The presence of any one of these elements may be sufficient to establish the presence of a substantial step. Id. The decision in <u>Jeffries v. United States</u> is instructive. 2018 WL 4903267 (E.D. Va. Oct. 9, 2018). The court found that arranging to meet and have intercourse was not necessary where the movant had made "an effort to convince the child to send pictures of her vagina and masturbate while he 'talked' dirty to her." Id. at *11, n.13. The court also noted that the movant's act of sending a photograph of his exposed and erect penis to the UC/minor constituted an act of enticement beyond mere words. Id.

The facts which the movant stipulated to and which he confirmed under oath establish that he took a substantial step. The movant confirmed the minor was 13 years old at the time, and he sent messages saying that he wanted to be "the first to taste her," that "[w]ell, I think that is third base. But I wanna go homerun." He discussed becoming the minor's first sexual partner, that he often thought of "feeling [her] on [him]," that he wanted "to see all of [her]," stating "[l]et me see!" and responding with four smiley faces when the UC/Minor asked the movant if he meant that he wanted to see her naked. The movant told the UC/Minor that their conversations about what they would do when the minor came to visit in October gave him an erection. He sent a message stating, "I want to give this to you," and then sent a live-streamed video to the UC/Minor of himself fondling his erect penis. The movant requested live videos of the minor in return and asked, "show me what I type or take a photo of you touching it!!". Taken together, these communications more than suffice in establishing a substantial step in enticing the UC/minor to engage in sexual activity.

The movant now contests that he confirmed the minor was under 13, that he "steered the path toward inappropriate conduct," and that he asked the minor for sexually explicit photographs, each of which he stipulated to in his plea agreement and which he affirmed under oath to the court. "[A]

defendant's solemn declarations in open court affirming [a plea] agreement ... 'carry a strong presumption of verity.'" <u>United States v. White</u>, 366 F.3d 291, 295 (4th Cir.2004) (quoting <u>Blackledge v. Allison</u>, 431 U.S. 63, 76 (1977) (alterations omitted). "[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements." <u>United States v. Lemaster</u>, 403 F.3d 216, 221–22 (4th Cir. 2005).  The movant has evidenced no extraordinary circumstance to justify relitigating these stipulated and affirmed facts beyond his own unsubstantiated assertion that the government altered Instagram messages, made for the first time in the context of this § 2255 motion.  The movant is thus bound by the facts he stipulated to and the objection is overruled.

The movant's second objection states that he did not ask for or receive the UC/minor's assent to engage in sexual activity.  This is not an element of the offense but appears to be a challenge to the intent element of the statute.  The Instagram messages demonstrate that the movant did "knowingly attempt to convince the minor to achieve the mental state of assenting to his sexual proposals" as required to establish intent under the statute.  <u>See Jeffries</u>, 2018 WL 4903267, at

*11.  As the Fourth Circuit has explained, § 2422(b) was enacted to avert "the psychological sexualization of children" and can be violated "regardless of the accused's intentions concerning the actual consummation of sexual activities with the minor." United States v. Fugit, 703 F.3d 248, 255 (4th Cir. 2012).  The messages that the movant sent establish a knowing attempt to convince the minor to assent to sexual proposals, even crediting the movant's assertion that he did not actually intend to consummate sexual activity.  The objection is overruled.

Third, the movant objects to the proposed finding that he lacked a valid entrapment defense.  An entrapment defense at trial involves a burden shifting approach, in which the defendant must first show that the government induced him to engage in the criminal activity.  United States v. Jones, 976 F.3d 368, 375-76 (4th Cir. 2019), cert. denied, 140 S. Ct. 113 (2019).  Once the defendant demonstrates government inducement, the government then bears the burden of proving the defendant's predisposition to have engaged in the criminal conduct.  Id.  To prove inducement, the defendant must show "governmental overreaching and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party." United States v. Daniel, 3 F.3d 775, 778 (4th Cir. 1993).  Such governmental behavior must be more than "mere solicitation," and must be "so inducive to a reasonably firm person as likely to

displace mens rea." <u>United States v. Hsu</u>, 364 F.3d 192, 198 (4th Cir. 2004).  "Predisposition 'focuses upon whether the defendant was an unwary innocent or, instead, an unwary criminal who readily availed himself of the opportunity to perpetrate the crime.'"  <u>United States v. Young</u>, 916 F.3d 368, 375–76 (quoting <u>Mathews v. United States</u>, 485 U.S. 58, 63 (1988)).

In relation to inducement, the movant points to the fact that the UC/minor used "flirtatious emojis," posed sexual questions to him, would restart conversations after he had gone quiet, and requested to meet him for sex.  He points out that he only inquired into the UC/minor's age after several days of communication[1] and only sent the explicit video of himself fondling his erect penis after several weeks.

The movant has not demonstrated inducement, even accepting his version of the facts.  Sending flirtatious messages and the posing of sexual questions is the kind of "mere solicitation" which falls short of establishing inducement. Such messages are not so coercive as to make an innocent person commit crimes and to displace mens rea.  Moreover, the facts do not bear out movant's self-characterization as a passive victim

---

[1] This assertion contradicts the facts as stipulated and affirmed.  A law enforcement officer took over the minor's account on August 31, 2017 and the movant confirmed the UC/minor's age the very next day, September 1, 2017.  ECF No. 53-1 at 38.

of governmental overreach.  Rather, the movant was an active participant, initiating contact with the minor, complimenting her appearance in a revealing photograph, frequently discussing sexual activity with the minor with minimal, if any, instigation, and sending an unsolicited livestream video of himself masturbating to the UC/minor.  Thus, the movant has not shown that he would have been able to claim entrapment had this case been brought to trial.  See Vinci v. United States, 2017 WL 1954541, at *5 (W.D.N.C. May 10, 2017) (the movant's entrapment claim would have failed because although the government initiated the contact, the movant introduced the topic of sex, actively requested sexy video and nude photographs of who he believed was a 15-year-old girl, and suggested meeting for sex).

Fourth, the movant objects to the finding that he had a predisposition to commit this crime.  As explained above, predisposition is an element of the entrapment defense.  Because the movant has not demonstrated inducement, the court need not reach the issue of predisposition.  Still, the court notes that the government had evidence of movant's predisposition to commit crimes of this kind, including the touching of a minor's thigh at church that led to a complaint with church leaders, initiating internet contacts with other minor females, and making inappropriate comments to the victim in this case before the undercover agent took over her account.  ECF No. 53 at 12;

13

see also ECF No. 53-1 at 115 (discussing at sentencing the fact
that the movant was found with his hand on the thigh of a 7-
year-old at church, attempted to open communication with other
minors over the Instagram application, and tried to establish a
sexual relationship with the victim in this case).

Fifth, the movant objects to the finding that he has
not demonstrated ineffective assistance of counsel.  Ineffective
assistance of counsel is a claim made under the Sixth Amendment
to the United States Constitution.  Strickland v. Washington,
466 U.S. 668, 680 (1984).  A criminal defendant bears the burden
of proving two prongs and "a failure of proof on either prong
ends the matter."  United States v. Roane, 378 F.3d 382, 404
(4th Cir. 1994).  The defendant must show (1) that counsel's
representation fell below an objective standard of
reasonableness and (2) that he was actually prejudiced by the
ineffective assistance of counsel.  "Judicial scrutiny of
counsel's performance must be highly deferential."  Strickland,
466 U.S. at 689.  The "court must indulge a strong presumption
that counsel's conduct falls within the wide range of reasonable
professional assistance ... [and] that, under the circumstances,
the challenged action might be considered sound trial strategy."
Id. (internal quotation marks omitted).  The inquiry under
Strickland is "whether an attorney's representation amounted to
incompetence under prevailing professional norms, not whether it

14

deviated from best practices or most common custom." <u>Harrington</u> <u>v. Richter</u>, 562 U.S. 86, 88 (2011).  To establish the second prong, the movant "must show that 'counsel made errors so serious that counsel was not functioning as the counsel guaranteed ... by the Sixth Amendment.'" <u>DeCastro v. Branker</u>, 642 F.3d 442, 450 (4th Cir. 2011) (citing <u>Harrington</u>, 131 S.Ct. at 787)); see <u>also</u>, <u>Strickland</u>, 466 U.S. at 687.  The movant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." <u>Id.</u> at 694.

          A movant challenging a guilty plea on collateral review based on ineffective assistance of counsel bears a particularly heavy burden.  As the Supreme Court has explained:

> When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within the standards set forth in [<u>McMann</u> <u>v. Richardson</u>, 397 U.S. 759 (1970)].

<u>Tollett v. Henderson</u>, 411 U.S. 258, 267 (1973).  In proving ineffective assistance of counsel following a guilty plea, a movant must prove that "there is a reasonable probability that, but for counsel's errors, [the movant] would not have pleaded

15

guilty and would have insisted on going to trial." <u>Hill v.
Lockhart</u>, 474 U.S. 52, 59 (1985).

     The movant argues that his counsel, Byers, was
deficient and caused him to plead guilty, despite his innocence.
First, he argues that Byers' failed to prepare, conduct
interviews, or investigate the case, and that had he done so,
Byers would have discovered the supposed lack of evidence for
the offense.  He argues that the failure deprived him of the
opportunity to make an informed decision.  Second, he states
that Byers told him to accept the plea without adequately
explaining the plea deal further.  He contends that in court,
Byers told him how to respond to questions from the court.

     "When evaluating objective reasonableness under the
prejudice prong of <u>Strickland</u>, the challenger's subjective
preferences ... are not dispositive; what matters is whether
proceeding to trial would have been objectively reasonable in
light of all of the facts." <u>Christian v. Ballard</u>, 792 F.3d 427,
452–53 (4th Cir. 2015) (markings and citation omitted).  In
other words, the movant cannot satisfy <u>Strickland</u> "merely by
telling the court now that he would have gone to trial then if
he had gotten different advice" from Byers.  <u>Id.</u>  Rather, the
movant must "convince the court that a decision to reject the

plea bargain would have been rational under the circumstances."
Id.

The movant has not demonstrated that the decision to plead guilty was objectively unreasonable and has not shown that supposed deficiencies of counsel prejudiced him in deciding to plead guilty.  To the contrary, for the reasons outlined supra, the prosecution had produced evidence sufficient to convict the movant of the offense to which he pled guilty and he lacked a credible defense to the charge.  The available evidence shows that the movant benefitted substantially from the decision to plead guilty to the offense.  The recommended sentencing range for the movant's charge was 168 to 210 months imprisonment.  The movant received a three-level downward variance, to an advisory range of 121 to 151 months, in part because of the extent of his acceptance of responsibility.  In receiving the lowest end of that range, the court credited the mercy sought for the movant by the minor's father, which may not have been sought if the movant had not fully accepted responsibility for his actions. The movant was ultimately sentenced to 121 months, just one month more than the statutory minimum.

Moreover, as part of the plea deal, the movant avoided being charged with attempted production of child pornography, 18 U.S.C. §§ 2251 (a) and (e).  The movant sent a sexually explicit

video of himself to the UC/minor and requested a video of
herself masturbating. The movant faced a statutory minimum
sentence of 15 years for attempted child pornography if
convicted and has not produced evidence to suggest he had a
viable defense to such charges either. Avoiding this charge
provided defendant with a substantial benefit above going to
trial. As such, the defendant has not demonstrated prejudice
resulting from his counsel's advice to plead guilty. The
objection is overruled.

Sixth, the movant objects that he has demonstrated a
claim for actual innocence. For the reasons explained herein,
the movant has not shown it more likely than not that no
reasonable juror would have found petitioner guilty beyond a
reasonable doubt of the offense, nor has he produced new
evidence to undermine that conclusion. The objection is
overruled.

Additionally, the movant does not appear to have
objected to the magistrate judge's finding that the movant's
motion for appointment of counsel be denied as moot because he
lacks any potentially meritorious claim for relief under § 2255.
That finding is adopted as well.

Finally, the movant requests the court grant an
evidentiary hearing. ECF No. 71. The request does not explain

why the movant is entitled to an evidentiary hearing, but merely states that it is needed given "issues on credibility, lack of evidence, ineffective counsel, fabricated evidence, and a chance to show [his] innocence." Id. Section 2255(b) provides, in pertinent part: "Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall ... grant a prompt hearing thereon ...." 28 U.S.C. § 2255.  As the Fourth Circuit has explained, "[g]enerally, an evidentiary hearing is required under 28 U.S.C. § 2255 unless it is clear from the pleadings, files, and records that a movant is not entitled to relief." United States v. Robinson, 238 Fed.Appx. 954, 954 (4th Cir. 2007) (citing United States v. Witherspoon, 231 F.3d 923, 925-26 (4th Cir. 2000) and Raines v. United States, 423 F.2d 526, 529 (4th Cir. 1970)). Whether an evidentiary "hearing may be necessary, and whether petitioner's presence is required, is best left to the common sense and sound discretion of the district judges." Raines, 423 F.2d at 530.

The movant has simply failed to present any factual or legal basis for relief.  Consequently, an evidentiary hearing is not warranted and this request is denied.

### III. Conclusion

The court, accordingly, ORDERS as follows:

1. That the movant's objections to the PF&R be, and they hereby are, overruled;

2. That the magistrate judge's Proposed Findings and Recommendation be, and hereby are, adopted and incorporated in full;

3. That the movant's motion to vacate, set aside, or correct sentence under 28 U.S.C. § 2255 be, and hereby is, denied;

4. That the movant's motion for appointment of counsel be, and hereby is, denied;

5. That the movant's motion for an evidentiary hearing be, and hereby is, denied; and

6. This case be, and hereby is, dismissed from the docket of the court.

The Clerk is directed to transmit copies of this memorandum opinion and order to all counsel of record, to the movant, and to the United States Magistrate Judge.

Enter: January 13, 2021

John T. Copenhaver, Jr.
Senior United States District Judge

20